JEFFREY N. GREENMAN, ESQ. - 001791980
ROY B. GREENMAN, ESQ. - 010631974
BUDIN, GREENMAN & GREENMAN
Attorneys for Plaintiffs
1379 Morris Avenue
Union, New Jersey 07083
(908) 688-6444
(908) 688-4334 – Fax
Jng.bgglaw@gmail.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN T. PENISTON by SUZANNE L. PENISTON as Administrator Ad Prosequendum of the ESTATE OF JOHN T. PENISTON, and SUZANNE L. PENISTON, <br><br> Plaintiffs, <br> v. <br><br> MEDTRONIC, INC; CAITLIN SHOEMAKER; TASHA PROFIT; DAVID S. FRANKEL, M.D.; John Does 1-100 (representing presently unknown healthcare providers; including, but not limited to, doctors, nurses, technicians, etc.); Jane Does 1-100 (representing presently unknown healthcare providers; including, but not limited to, doctors, nurses, technicians, etc.); Richard Roes 1-100 (representing presently unknown agents and/or employees of Medtronic); Jane Roes 1-100 (representing presently unknown agents and/or employees of Medtronic) ABC CORPS. 1-100 (representing presently unknown facilities or entities) and Doe Managed Care Company 1-100 (a fictitious designation representing the class of as yet unknown corporate entities affiliated or connected in any manner with the individual Defendants in this matter or with Plaintiff's care and vicariously, directly or administratively responsible for the other medical providers actions or failures or Plaintiff's injuries), *et. al,* <br><br> Defendants. | DOCKET NUMBER: 3:18-cv-13533 <br><br> CIVIL ACTION <br> AMENDED COMPLAINT <br> PURSUANT TO ORDER <br> DATED APRIL 29, 2019 <br><br> PLAINTIFFS DEMAND A TRIAL BY JURY |

Plaintiffs **JOHN T. PENISTON by SUZANNE L. PENISTON as Administrator Ad Prosequendum** of the **ESTATE OF JOHN T. PENISTON, and SUZANNE L. and SUZANNE L. PENISTON,** respectfully allege as follows:

## NATURE OF CASE

1. This is a civil action on the theories of negligence and/or medical malpractice for 1) personal injuries suffered by plaintiff, **JOHN T. PENISTON**; 2) the wrongful death of plaintiff, **JOHN T. PENISTON** and 3) loss of consortium by plaintiff, **SUZANNE L. PENISTON** against defendants **MEDTRONIC, INC; DAVID S. FRANKEL, M.D.; CAITLIN SHOEMAKER; TASHA PROFIT;** and other possible unknown defendants including but not limited to unknown healthcare providers and unknown agents and/or employees of defendant **DAVID S. FRANKEL, M.D.** and defendant **MEDTRONIC, INC.** referred to in the Complaint as **John Does 1-100, Jane Does 1-100, Richard Roes 1-100 and Jane Roes 1-100.**

2. This action arises out of medical treatment provided to plaintiff **JOHN T. PENISTON** which involved the implantation into the chest of plaintiff, **JOHN T. PENISTON** a cardiac monitoring device which was manufactured and distributed by defendant **MEDTRONIC, INC.** known as a Medtronic Reveal Linq Cardiac Monitoring Device (Serial #RLA8413065) (hereinafter referred to as Reveal Linq). Said device was implanted by defendant **DAVID S. FRANKEL, M.D.** In May, 2016. The purpose of the implantation of the aforementioned device was to monitor the plaintiff **JOHN T. PENISTON**'s heart function so as to evaluate what if any treatment plaintiff needed to address issues relating to his heart. After the device was implanted and plaintiff returned home he was provided with a monitoring device which was also manufactured and distributed by defendant **MEDTRONIC, INC.** i.e. MyCare Link Patient Monitoring Unit Mode #24950 (hereinafter referred to as MyCare Link). The purpose of this device was to record data from the plaintiff's heart function and have whoever was monitoring the data provide said data i.e.

specifically data which showed any abnormal functions of plaintiff's heart, to the treating physician i.e. **DAVID S. FRANKEL, M.D.** so that **DR. DAVID S. FRANKEL, M.D.** could address and treat any issues that might be causing problems for the plaintiff. The plaintiffs were given minimal instructions by a representative of defendant **MEDTRONIC, INC.** on how to setup and use the MyCare Link device.

3. As per the records in possession of plaintiff on July 17, 2016 at approximately 9:27 AM the plaintiff suffered a significant cardiac issue i.e. a four (4) second variance (delay) in his heartbeat which was recorded by the aforesaid heart monitoring devices,

4. As per the records in possession of plaintiff the data showing this four (4) second variance (delay) in plaintiff's heartbeat was not received by the defendant **DR. DAVID S. FRANKEL, M.D.'s** office until approximately 3:00 PM on July 21, 2016 a delay of more than four (4) days. Thereafter, the information of the four (4) second variance (delay) was immediately relayed by defendant **DAVID S. FRANKEL's** staff to defendant **DAVID S. FRANKEL, M.D.** at 3:05 PM on July 21, 2016. However, **DAVID S. FRANKEL, M.D.** did not acknowledge receipt and/or take any action on the information received about the four (4) second variance (delay) until approximately 7 hours later at 10:01 on July 21, 2016.

5. During this delay from 9:27 AM on July 17, 2016 until 10:01 on July 21, 2016 plaintiff was unaware that he had suffered the aforesaid four (4) second variance (delay) on July 17, 2016 and was unaware that he was at risk for the issue to happen again. As a result, he was unaware of the need to have the situation treated or to take any precautions if it happened again.

6. On July 21, 2016 at approximately 9:00 PM plaintiff was standing in his garage when he had another significant cardiac issue. This time it was an eight (8) second variance (delay) in his heartbeat which caused plaintiff to lose consciousness which resulted in his falling onto the concrete

floor of his garage causing him to suffer serious injuries including, but not limited to, a fractured skull.

7. Thereafter, on September 17, 2017, as a result of the fractured skull that plaintiff suffered on July 21, 2016, plaintiff suffered a major seizure which required plaintiff to be hospitalized and eventually caused plaintiff's death on September 19, 2017.

8. Defendants' negligence and/or deviation from the accepted medical standard of care which caused the four (4) day delay in the receipt by plaintiff's doctor of the life threatening information concerning his heart condition were substantial contributing factors in causing plaintiff's injuries and subsequent death. Had the information about the original four (4) second variance (delay) been received and acted upon by defendant **DAVID S. FRANKEL, M.D.** in a timely matter then plaintiff's condition which caused the variance in his heartbeat could have been corrected or at least plaintiff could have been warned to take precautions in the event another variance (delay) in his heartbeat occurred.

## PARTIES

9. Plaintiff, **JOHN T. PENISTON** was an individual and citizen of the State of New Jersey and was employed by Anheuser Bush until his retirement in 2017.

10. As a result of the injuries suffered in this matter, plaintiff, **JOHN T. PENISTON** died on September 19, 2017.

11. Plaintiff, **SUZANNE L. PENISTON** is an individual and citizen of the State of New Jersey and at all pertinent times in the instant case was the wife of **JOHN T. PENISTON**, and after his death was appointed **Administrator Ad Prosequendum of the ESTATE OF JOHN T. PENISTON.**

12. Defendant, **MEDTRONIC, INC.,** a Delaware Company is a medical device company whose principal place of business is in the State of Minnesota. They design, manufacture,

distribute, sell, promote, maintain and monitor their medical devices including, but not limited to, the devices which are the subject matter of this Complaint i.e. The Reveal Linq Cardiac Monitoring Device (Serial#RLA841306A) (Reveal Linq) which was inserted into plaintiff **JOHN T. PENISTON'S** chest in May, 2016 under the supervision of defendant **DAVID S. FRANKEL, M.D.** and the MyCare Link Monitoring Device (MyCare Link) which was provided by defendant **MEDTRONIC, INC.** to plaintiff's to monitor the data received from the Reveal Linq.

13. Defendant, **DAVID S. FRANKEL, M.D.**, as an individual and citizen of the State of Pennsylvania. He is a Cardiologist whose office is located at University of Pennsylvania Hospital, Philadelphia, Pennsylvania. **DR. DAVID S. FRANKEL** was plaintiff **JOHN T. PENISTON'S** treating physician at all relevant times in this matter and inserted the aforesaid heart monitoring device into the chest of plaintiff **JOHN T. PENISTON** in order to monitor plaintiff **JOHN T. PENISTON's** heart functions. Defendant, **DAVID S. FRANKEL, M.D.** was responsible for monitoring and/or reviewing the data collected by the aforesaid monitor and determining what if any medical treatment needed to be provided to plaintiff, **JOHN T. PENISTON.**

14. Defendant, **CAITLIN SHOEMAKER,** is an employee of defendant, **DAVID S. FRANKEL, M.D.** and is an individual and citizen of the State of Pennsylvania. It is believed, that her duties in this matter were to monitor and/or receive data and then provide to defendant, **DAVID S. FRANKEL, M.D.** any data that was provided by the monitoring device which might possibly require action to be taken by defendant, **DAVID S. FRANKEL, M.D.**

15. Defendant, **TASHA PROFIT,** is believed to be an employee of defendant, **DAVID S. FRANKEL, M.D.** and is an individual and citizen of the State of Pennsylvania. It is believed, that her duties in this matter were to assist **DR. DAVID S. FRANKEL** and/or to monitor and/or receive data and then provide to defendant, **DAVID S. FRANKEL, M.D.** any data that was

provided by the monitoring device which might possibly require action to be taken by defendant, **DAVID S. FRANKEL, M.D.**

16. Defendants, **JOHN DOES 1-100 and JANE DOES 1-100**, are unknown healthcare providers who are or may have been involved in treatment of plaintiff, **JOHN T. PENISTON**.

17. Defendants, **RICHARD ROES 1-100 and JANE ROES 1-100,** are unknown agents and/or employees of defendant, **MEDTRONIC, INC.** who were involved in plaintiff, **JOHN PENISTON'S** care in this matter and/or were responsible for any matters involving the Medtronic equipment in question.

## JURISDICTION

18. This Court has jurisdiction over this matter under 28 U.S.C. §1332, in that the amount of controversy exceeds **Seventy Five Thousand Dollar ($75,000.00)** based upon the alleged injuries of plaintiff **JOHN T. PENISTON** including his wrongful death and plaintiffs **JOHN T. PENISTON** and **SUZANNE L. PENISTON** are citizens of States which are different from the States where defendants are incorporated and/or have their principal places of business i.e. plaintiff's are citizens of the State of New Jersey, defendant, **MEDTRONIC, INC'S** principal place of business is the State of Minnesota; defendant, **DAVID S. FRANKEL, M.D.** is a citizen and his principal place of business is the State of Pennsylvania; defendants **CAITLIN SHOEMAKER** and **TASHA PROFIT** are both citizens of Pennsylvania with their principal place of business in the State of Pennsylvania.

## FACTUAL ALLEGATIONS

### DEFENDANT, MEDTRONIC, INC.

19. On or about May, 2016 defendant, **MEDTRONIC, INC.** was a Medical Device Company which manufactured, distributed, sold, maintained and monitored medical devices including the device which was implanted in plaintiff, **JOHN T. PENISTON'S** chest on May,

2016 (Reveal Linq) and the monitoring unit (MyCare Link) which was provided to plaintiff and his wife after the implantation of the Reveal Linq to monitor the data from the Reveal Linq. Upon plaintiffs return home after the implantation a representative of defendant, **MEDTRONIC, INC.** provided the plaintiffs' with the MyCare Link and gave them minimal instructions on how to set up and it use the MyCare Link.

20. On Information and belief defendant, **MEDTRONIC, INC.** was responsible for maintaining the aforementioned devices to keep them in proper working order as well as the monitoring of the data provided by the Reveal Linq and the MyCare Link and was responsible to provide any data received from these devices which indicated any irregularity in plaintiff's heart function to plaintiff's treating physician in a timely manner.

21. On July 17, 2016 at 9:27 AM the plaintiff suffered a four (4) second variance (delay) in his heartbeat. This four (4) second variance (delay) was recorded by the two (2) aforesaid devices. This variation indicated that plaintiff was at risk for another episode which could cause plaintiff to lose consciousness or worse and required immediate intervention by plaintiff's doctor.

22. However, according to the records in possession of plaintiff this information was not relayed by defendant, **MEDTRONIC, INC.** through it agents and/or employees to defendant, **DAVID S. FRANKEL, M.D.'s** office until July 21, 2016 at approximately 3:00 PM.

23. During this more than four (4) day delay in receiving this information plaintiff was unaware of any urgent issue concerning his heart function and was continuing to perform his normal activities. On July 21, 2016 at approximately 9:00 PM plaintiff, **JOHN T. PENISTON** while standing in his garage suffered another serious incident involving his heart function. This time he suffered an eight (8) second variance (delay) in his heartbeat which caused him to lose consciousness, fall and suffer serious bodily injuries including, but not limited to, a fractured skull which later caused his death.

### DEFENDANT, DAVID S. FRANKEL, M.D.; DEFENDANT, CAITLIN SHOEMAKER; DEFENDANT, TASHA PROFIT

24. From May, 2016 through July 21, 2016 and thereafter defendant, **DAVID S. FRANKEL, M.D.** was plaintiff's Cardiologist treating him for heart issues. From May, 2016 through July 21, 2016 defendants, **CAITLIN SHOEMAKER and TASHA PROFIT** were employees of defendant, **DAVID S. FRANKEL, M.D.** As part of plaintiff's treatment **DAVID S. FRANKEL, M.D.** on May, 2016 inserted a cardiac monitoring device i.e. the Medtronic Reveal Linq (Serial #RLA8413065) (Reveal Linq) into plaintiff's chest to monitor plaintiff's heart function. On information and belief of defendant **DAVID S. FRANKEL, M.D.** and his staff including defendants, **CAITLIN SHOEMAKER and TASHA PROFIT** were responsible for monitoring and evaluating the information received from the aforementioned heart monitoring devices which were recording the data regarding plaintiff's heart function.

25. According to the records in possession of plaintiff on July 17, 2016 at 9:37 AM there was a significant four (4) second variance (delay) in plaintiff's heart function.

26. According to the records in possession of plaintiff this information was not received and/or addressed by defendant, **DAVID S. FRANKEL, M.D.** or his staff until 3:00 PM on July 21, 2016 based upon an e-mail that was sent by defendant, **CAITLIN SHOEMAKER** to defendant, **TASHA PROFIT** who then sent an e-mail with the information to defendant, **DAVID S. FRANKEL, M.D.** at 3:05 PM on July 21, 2016. Defendant, **DAVID S. FRANKEL, M.D.** did not respond to the information sent by defendants, **CAITLIN SHOEMAKER and TASHA PROFIT** until 10:01 PM on July 21, 2016 when he sent defendant, **TASHA PROFIT** an e-mail indicating that the information she had provided from the cardiac monitoring devices was serious and that medical action needed to be taken.

27. Unfortunately, as previously stated, on July 21, 2016 at approximately 9:00 PM plaintiff, **JOHN T. PENISTON** who was unaware of the prior four (4) second variance (delay) in his heartbeat on July 17, 2016, suffered another variance (delay) in his heartbeat. This one was eight (8) seconds and caused him to lose consciousness, which resulted in his falling to the ground and suffering serious injuries including, but not limited to, a fractured skull. Months later on September 17, 2017 as a result, of the fractured skull he suffered on July 21, 2016 he had a massive seizure, which caused his death on September 19, 2017. This subsequent variance would have been prevented and/or the injuries caused due to plaintiff's losing consciousness would have been prevented had the information been provided in a timely manner to defendant, **DAVID S. FRANKEL, M.D.** and had defendant, **DAVID S. FRANKEL, M.D.** provided the appropriate treatment to prevent another episode of a heart variance or at least to have warned plaintiff, **JOHN T. PENISTON** that it might be coming so as to take proper precautions to avoid injury if he lost consciousness.

## COUNT ONE

## NEGLIGENCE AND/OR MEDICAL MALPRACTICE

28. Plaintiffs, **JOHN T. PENISTON and SUZANNE L. PENISTON** incorporate by reference all preceding paragraphs of the Complaint as if fully set forth herein.

29. On or about May, 2016, plaintiff, **JOHN T. PENISTON** was a patient of defendant, **DAVID S. FRANKEL, M.D.**, a Cardiologist. As part of defendant, **DAVID S. FRANKEL, M.D.'S** treatment of plaintiff, **JOHN T. PENISTON** defendant, **DAVID S. FRANKEL, M.D.** in May, 2016 inserted a cardiac monitoring device i.e. Reveal Linq in the chest of plaintiff, **JOHN T. PENISTON** in order to monitor plaintiff's heart function as an aid in his treatment.

30. The above referenced cardiac monitoring device was manufactured, sold, distributed, maintained and monitored by defendant, **MEDTRONIC, INC.** and/or its employees and agents (**RICHARD ROES 1-100 and JANE ROES 1-100**).

31. After the insertion of the cardiac monitoring device defendant, **MEDTRONIC, INC.** through its agents and/or employees provided the plaintiff with a monitoring device i.e. MyCare Link which was also manufactured, sold, distributed, maintained and monitored by defendant, **MEDTRONIC, INC.** through it agents and/or employees. An agent and/or employee for defendant, **MEDTRONIC, INC. (JANE ROE)** provided minimal instructions on the use of the monitoring device (MyCare Link).

32. At the same time defendant, **MEDTRONIC, INC.**, through their employees and agents, defendant, **DAVID S. FRANKEL, M.D.** and his agents and employees including, defendant, **CAITLIN SHOEMAKER** and defendant, **TASHA PROFIT** owed a duty of care to plaintiff, **JOHN T. PENISTON** to properly monitor the information collected from the heart monitoring devices and owed a duty of care to the plaintiff, **JOHN T. PENISTON** to make sure that any pertinent information provided by the cardiac monitoring devices was timely provided to defendant, **DAVID S. FRANKEL, M.D.** and/or his agents and employees so that defendant, **DAVID S. FRANKEL, M.D.** could render the appropriate medical treatment in response to the information provided.

33. According to the records in possession of plaintiff, on July 17, 2016 at 9:37 AM the plaintiff suffered an unsafe four (4) second variance (delay) in his heartbeat.

34. According to the records in possession of plaintiff this information of the four (4) second variance (delay) in plaintiff's heartbeat on July 17, 2016 at 9:37 AM was not conveyed and/or received by defendant, **DAVID S. FRANKEL, M.D.'S** office until 3:00 PM on July 21, 2016 and

thereafter was not acted on by defendant, **DAVID S. FRANKEL, M.D.** until 10:01 PM on July 21, 2016.

35. This more than four (4) day delay for the defendant, **DAVID S. FRANKEL, M.D.** to receive the crucial medical information about the four (4) second variance (delay) in plaintiff, **JOHN T. PENISTON'S** heartbeat prevented plaintiff from receiving proper medical treatment to which would have addressed the issue of this variance in the plaintiff's heartbeat and prevented a re-occurrence.

36. As a result of the more than four (4) day delay, plaintiff, **JOHN T. PENISTON**, did not receive the treatment needed to address the problem he was having with his heart function and on July 21, 2016 at approximately 9:00 PM plaintiff suffered another variance (delay) in his heartbeat. This one was for eight (8) seconds and resulted in plaintiff losing consciousness while he was standing in his garage. He was caused to fall onto the ground and suffered serious injuries including, but not limited to, a fractured skull. Thereafter, as a result of the fractured skull plaintiff, **JOHN T. PENISTON** suffered a massive seizure on September 17, 2017 which caused his death on September 19, 2017.

37. Defendant, **MEDTRONIC, INC.** through its agents and employees (**RICHARD ROES 1-100 and JANE ROES 1-100**) were negligent and/or deviated from the accepted medical standard of care as follows:

    a) Failing to properly maintain the devices in question so that they would work as designed;

    b) Failing to properly instruct the plaintiffs on the proper use of the devices in question;

    c) Failing to properly monitor the data from the devices in question so that any pertinent data such as a four (4) second variance

(delay) in plaintiff's heartbeat as occurred on July 17, 2016 at 9:37 AM be timely provided to plaintiff's treating physician, defendant, **DAVID S. FRANKEL, M.D.**

38. Defendants, **DAVID S. FRANKEL, M.D.; CAITLIN SHOEMAKER; and TASHA PROFIT** and any other agents or employees of defendant, **DAVID S. FRANKEL, M.D. (JOHN DOES 1-100 and/or JANE DOES 1-100)** were negligent and/or deviated from the accepted medical standard of care as follows:

a) Failing to properly set up the parameters of the devices as to what data needed to be designated as urgent and immediately provided to defendant, **DAVID S. FRANKEL, M.D.'s** attention;

b) Failing to properly monitor the data from the devices in question so that any pertinent data such as a four (4) second variance (delay) in plaintiff's heartbeat as occurred on July 17, 2016 at 9:37 AM be timely provided to defendant, **DAVID S. FRANKEL, M.D.**;

c) Failing to timely provide the information about the variance in plaintiff's heartbeat on July 17, 2016 at 9:37 AM to defendant, **DAVID S. FRANKEL, M.D.**;

d) Failing to take appropriate action on the information of plaintiff's four (4) second variance (delay) which occurred on July 17, 2016 at 9:37 AM from the time they received the information at 3:00 PM on July 21, 2016 until 10:01 PM on July 21, 2016;

39.  As a direct and proximate result of the negligence and/or the deviation of the accepted medical standard of care by the defendants, **MEDTRONIC, INC.** and/or their agents and employees **RICHARD ROES 1-100 and JANE ROES 1-100)**; defendant, **DAVID S. FRANKEL, M.D.**; defendant, **CAITLIN SHOEMAKER**; defendant, **TASHA PROFIT** and/or any other agents or employees of defendant, **DAVID S. FRANKEL, M.D. (JOHN DOES 1-100 and/or JANE DOES 1-100)** plaintiff, **JOHN T. PENISTON** suffered another variance (delay) of his heartbeat this one lasted for eight (8) seconds and occurred on July 21, 2016 at approximately 9:00 PM. As a result of plaintiff, **JOHN T. PENISTON** suffering this episode he lost consciousness and as a result fell on the ground causing serious bodily injury including, but not limited to, a fractured skull which eventually caused his death.

40.  As a direct and proximate result of the negligence and/or deviation from the accepted medical standard of care of the defendants, **MEDTRONIC, INC.** and/or their agents and employees **RICHARD ROES 1-100 and JANE ROES 1-100)**; defendant, **DAVID S. FRANKEL, M.D.**; defendant, **CAITLIN SHOEMAKER**; defendant, **TASHA PROFIT** and/or any other agents or employees of defendant, **DAVID S. FRANKEL, M.D. (JOHN DOES 1-100 and/or JANE DOES 1-100)** plaintiff, **JOHN T. PENISTON** was caused to suffer severe painful bodily injuries which required extensive medical treatment, incapacitated plaintiff from pursuing his usual employment and other activities; and has left him with permanent disabilities which incapacitated him and caused him pain and suffering and caused his death.

## COUNT TWO

## WRONGFUL DEATH

41  Plaintiffs, **JOHN T. PENISTON and SUZANNE L. PENISTON** repeat and realleges each and every allegation contained in the Complaint and incorporates each and every allegation as if fully set forth at length.

42. As a direct and proximate result of the negligence and/or deviation from the accepted medical standard of care of the defendants, **MEDTRONIC, INC.** and/or their agents and employees (**RICHARD ROES 1-100 and JANE ROES 1-100**); defendant, **DAVID S. FRANKEL, M.D.**; defendant, **CAITLIN SHOEMAKER**; defendant, **TASHA PROFIT** and/or any other agents or employees of defendant, **DAVID S. FRANKEL, M.D.** (**JOHN DOES 1-100 and/or JANE DOES 1-100**), plaintiff, **SUZANNE L. PENISTON** was caused to be deprived of the future earnings of the decedent plaintiff, **JOHN T. PENISTON**, the advice, guidance and counsel of the decedent, **JOHN T. PENISTON**, the companionship of the decedent, **JOHN T. PENISTON** and other wrongful death damages.

## COUNT THREE

## SURVIVORSHIP

43. Plaintiffs, **JOHN T. PENISTON and SUZANNE L. PENISTON** repeat and realleges each and every allegation contained in the Complaint and incorporates each and every allegation as if fully set forth at length.

44. As a direct and proximate result of the negligence and/or from the accepted medical standard of care of the defendants, **MEDTRONIC, INC.** and/or their agents and employees **RICHARD ROES 1-100 and JANE ROES 1-100**); defendant, **DAVID S. FRANKEL, M.D.**; defendant, **CAITLIN SHOEMAKER**; defendant, **TASHA PROFIT** and/or any other agents or employees of defendant, **DAVID S. FRANKEL, M.D.** (**JOHN DOES 1-100 and/or JANE DOES 1-100**), the decedent, **JOHN T. PENISTON** was caused to suffer extreme conscious pain and suffering before his death.

## COUNT FOUR

## LOSS OF CONSORTIUM
## SUZANNE L. PENISTON

45. Plaintiffs, **JOHN T. PENISTON and SUZANNE L. PENISTON** incorporate by reference all preceding paragraphs of this Complaint as if fully set forth at length.

46. As a consequence of the negligence and/or deviation from the accepted medical standard of care of the defendants, **MEDTRONIC, INC.** and/or their agents and employees **RICHARD ROES 1-100 and JANE ROES 1-100**); defendant, **DAVID S. FRANKEL, M.D.**; defendant, **CAITLIN SHOEMAKER**; defendant, **TASHA PROFIT** and/or any other agents or employees of defendant, **DAVID S. FRANKEL, M.D. (JOHN DOES 1-100 and/or JANE DOES 1-100**) in this matter, plaintiff, **JOHN T. PENISTON** sustained significant and permanent injuries including eventually death as more fully described above.

47. Before suffering the injuries stated above plaintiff, **JOHN T. PENISTON**, was able to and did perform all the duties of a husband and did perform these duties including, but not limited, to maintaining the home, providing love, companionship, affection, society, sexual relations, moral support and solace to his wife, **SUZANNE L. PENISTON**.

48. Plaintiff, **SUZANNE L. PENISTON**, suffered from loss of society and consortium as a result of the injuries to husband.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demands upon defendants, individually, concurrently, jointly and severally, for:

    a) actual compensatory and statutory damages;

    b) pre and post judgment interest as allowed by law;

    c) an award of attorneys' fees as allowed by law;

    d) an award of taxable costs; and

    e) any and all such further relief as the Court deems just and proper.

## DEMAND FOR TRIAL

Plaintiffs hereby demand a jury trial as to all issues so triable as a matter of right pursuant to F.R.C.P. 38(b)(1) and 38(c).

## DESIGNATION OF TRIAL COUNSEL

Roy B. Greenman, Esq., has been designated as trial counsel in the above matter.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: 1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; 3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and 4) the Complaint otherwise complies with the requirements of Rule 11.

BUDIN, GREENMAN & GREENMAN
Attorneys for Plaintiffs

_____
JEFFREY N. GREENMAN, ESQ.
A Member of the Firm

Dated: May 23, 2019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOHN T. PENISTON by SUZANNE L.
PENISTON, as Administrator Ad
Prosequendum of the ESTATE OF JOHN
T. PENISTON, and SUZANNE L.
PENISTON,

    Plaintiffs,

v.

MEDTRONIC, INC.; CAITLIN
SHOEMAKER; TASHA PROFIT;
DAVID S. FRANKEL, MD; et al.

    Defendants.

Civil Action No. 3:18-cv-13533-BRM-TJB

**ORDER**

**THIS MATTER** is opened to this Court by Defendant Medtronic, Inc.'s ("Medtronic") Motion to Dismiss Plaintiffs John T. Peniston by Suzanne L. Peniston, as Administrator Ad Prosequendum of the Estate of John T. Peniston, and Suzanne L. Peniston's ("Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 5), and Defendants Caitlin Shoemaker ("Shoemaker"), Tasha Profit ("Profit"), and David S. Frankel, MD's ("Frankel") (collectively, the "Individual Defendants") Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8). Plaintiffs filed an Opposition to Medtronic's Motion to Dismiss (ECF No. 7) and to the Individual Defendants' Motion to Dismiss. (ECF No. 14). Medtronic filed a Reply Brief to Plaintiffs' Opposition (ECF No. 9), as did the Individual Defendants. (ECF No. 15). Having reviewed the submissions filed in connection

with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth in the accompanying Opinion and for good cause shown,

**IT IS** on this 29th day of April 2019,

**ORDERED** that Medtronic's Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Individual Defendants' Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**; and it is finally

**ORDERED** that Plaintiff shall have thirty (30) days from the entry of this Order to file an Amended Complaint consistent with the Court's ruling. Failure to do so will result in dismissal with prejudice.

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE

2